UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:17-CV-00085-BR

| | |
|---|---|
| CECELIA D. WALTON, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| | ) |
| N.C. DEPARTMENT OF HEALTH AND | ) |
| HUMAN SERVICES, DISABILITY | ) |
| DETERMINATION SERVICES, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on plaintiff Cecelia D. Walton's and defendant N.C. Department of Health and Human Services, Disability Determination Services' ("NCDHHS") cross-motions for summary judgment. (DE ## 35, 42.) Plaintiff, who appears *pro se*, filed a response in opposition to defendant's motion. (DE # 48.) NCDHHS filed a reply to plaintiff's response. (DE # 54.) The motions raised have been fully briefed and are ripe for disposition.

**I. BACKGROUND**

This action arises out of plaintiff's employment and subsequent termination from NCDHHS. On 7 March 2017, plaintiff filed this action alleging that NCDHHS: (1) discriminated against her based upon her sex and her age, (2) subjected her to a hostile work environment, and (3) terminated her in retaliation for a protected activity. (Compl. (DE # 5) at 2–4.) On 8 May 2017, defendant filed a motion to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Def.'s Mot. to Dismiss (DE # 15).) On 14 September 2017, the court granted in part and denied in part defendant's motion. (Order on Def.'s Mot. To Dismiss (DE #

21).) The court dismissed plaintiff's claims for age and sex discrimination, as well as plaintiff's hostile work environment claim based upon her age. (Id.) The court denied defendant's motion as to the hostile work environment claim based upon sexual harassment and the claim for unlawful retaliation. (Id.) Both sides subsequently moved for summary judgment on these two remaining claims.

Plaintiff's employment with NCDHHS originally began in October 2013, when she served as an On-Site Specialist with NCFAST in Mecklenburg County, North Carolina. (Walton Dec. (DE # 51-1) at 3.) On 30 June 2014, plaintiff was laid off from this position. (Id.) As a result, in February 2015, plaintiff filed an EEOC charge against NCDHHS. (Id.) In May 2015, plaintiff was rehired by the NCDHHS as a Disability Determination Examiner ("DE") trainee in the Disability Determination Services division ("DDS"). (Compl. (DE # 5) at 4.) While employed as a DE trainee, in October 2015, plaintiff received a right to sue letter from the EEOC regarding her February 2015 charge and notifying her that she had ninety days to file suit against NCDHHS for its alleged misconduct. (Id.)

As a DE trainee, plaintiff was required to complete a two-stage training process spanning the course of one year. (Def.'s Corrected App. to Statement of Facts (DE # 47) Goodson Aff. at 21, Wilson Aff. at 43.) After completion of twelve weeks of classroom training, trainees sign the Stage II Development Agreement Plan ("Stage II Agreement") and are assigned to a case processing unit to complete the remaining nine months of training. (Def.'s Corrected App. to Statement of Facts (DE # 47) Ex. 3 at 57, Goodson Aff. at 21, Wilson Aff. at 43; see also Pl.'s App. to Statement of Facts (DE # 40-1) at 7.) The Stage II Agreement outlines how trainees will be evaluated, provides for monthly progress reports and conferences, as well as highlights the consequences for failure to progress sufficiently. (See Def.'s Corrected App. to Statement of

21).) The court dismissed plaintiff's claims for age and sex discrimination, as well as plaintiff's hostile work environment claim based upon her age. (Id.) The court denied defendant's motion as to the hostile work environment claim based upon sexual harassment and the claim for unlawful retaliation. (Id.) Both sides subsequently moved for summary judgment on these two remaining claims.

Plaintiff's employment with NCDHHS originally began in October 2013, when she served as an On-Site Specialist with NCFAST in Mecklenburg County, North Carolina. (Walton Dec. (DE # 51-1) at 3.) On 30 June 2014, plaintiff was laid off from this position. (Id.) As a result, in February 2015, plaintiff filed an EEOC charge against NCDHHS. (Id.) In May 2015, plaintiff was rehired by the NCDHHS as a Disability Determination Examiner ("DE") trainee in the Disability Determination Services division ("DDS"). (Compl. (DE # 5) at 4.) While employed as a DE trainee, in October 2015, plaintiff received a right to sue letter from the EEOC regarding her February 2015 charge and notifying her that she had ninety days to file suit against NCDHHS for its alleged misconduct. (Id.)

As a DE trainee, plaintiff was required to complete a two-stage training process spanning the course of one year. (Def.'s Corrected App. to Statement of Facts (DE # 47) Goodson Aff. at 21, Wilson Aff. at 43.) After completion of twelve weeks of classroom training, trainees sign the Stage II Development Agreement Plan ("Stage II Agreement") and are assigned to a case processing unit to complete the remaining nine months of training. (Def.'s Corrected App. to Statement of Facts (DE # 47) Ex. 3 at 57, Goodson Aff. at 21, Wilson Aff. at 43; see also Pl.'s App. to Statement of Facts (DE # 40-1) at 7.) The Stage II Agreement outlines how trainees will be evaluated, provides for monthly progress reports and conferences, as well as highlights the consequences for failure to progress sufficiently. (See Def.'s Corrected App. to Statement of

Facts (DE # 47) Ex. 3 at 57–58.) By all accounts, plaintiff successfully completed her classroom training and signed her Stage II Agreement on 14 August 2015. (Id.) Upon doing so, plaintiff was assigned to Unit 27. (Compl. (DE # 5) at 4.)

Plaintiff's difficulties in her new role as a DE trainee began in September 2015. (Walton Dec. (DE # 51-1) at 2–3; Def.'s Corrected App. to Statement of Facts (DE # 47) Englander Aff. at 30, Goodson Aff. at 14, Wilson Aff. at 46–47.) On 3 September 2015, a verbal altercation ensued between plaintiff and her supervisor, Robert Englander, wherein plaintiff alleged Englander was unjustly singling her out and refusing to process her cases. (Walton Dec. (DE # 51-1) at 2–3; Def.'s Corrected App. to Statement of Facts (DE # 47) Englander Aff. at 30, Goodson Aff. at 14, Wilson Aff. at 46–47.) As a result of this altercation, both plaintiff and Englander conferred with their supervisors. (Walton Dec. (DE # 51-1) at 2–3; Def.'s Corrected App. to Statement of Facts (DE # 47) Englander Aff. at 30, Goodson Aff. at 14, Wilson Aff. at 46–47.) Plaintiff expressed her concerns regarding her work environment and complaints regarding Englander's behavior to his immediate supervisor, Tim Wilson, as well as to department supervisor Shannon Goodson and Susan Boykins with human resources. (Walton Dec. (DE # 51-1) at 2–3; Def.'s Corrected App. to Statement of Facts (DE # 47) Englander Aff. at 30, Goodson Aff. at 14, Wilson Aff. at 46–47.) Comparably, Englander expressed his concerns regarding plaintiff's work product and attitude to Wilson and Goodson. (Def.'s Corrected App. to Statement of Facts (DE # 47) Englander Aff. at 30, Wilson Aff. at 46–47, Goodson Aff. at 14–15.) As a result of the simultaneous complaints lodged by plaintiff and Englander, Wilson and Goodson both conducted meetings with the pair. (Def.'s Corrected App. to Statement of Facts (DE # 47) Englander Aff. at 30, Wilson Aff. at 46–47, Goodson Aff. at 14–15.) Thereafter, and for the duration of plaintiff's employment, plaintiff continued to lodge

3

complaints about Englander and Englander continued to express frustration regarding her work product and progress. (See Walton Dec. (DE # 51-1) at 2–3; Def.'s Corrected App. to Statement of Facts (DE # 47) Ex. 4–10, Englander Aff. at 31–35, Wilson Aff. at 47–51.)

In addition to plaintiff's complaints regarding Englander's processing of her cases and attempts to sabotage her progress, plaintiff claims that on at least four occasions she complained that Englander made inappropriate sexual comments to her during her one-on-one training sessions and that he appeared to be under the influence of marijuana at work. (See Walton Dec. (DE # 51-1) at 3.) While Goodson agrees that plaintiff brought alleged drug use to her attention, she denies that plaintiff made any complaints regarding inappropriate sexual comments by Englander. (See Def.'s Corrected App. to Statement of Facts (DE # 47) Goodson Aff. at 16–17.) Both plaintiff and Goodson acknowledge that plaintiff requested a unit and/or supervisor transfer as a result of her difficulties with Englander. (Walton Dec. (DE # 51-1) at 4; Def.'s Corrected App. to Statement of Facts (DE # 47) Goodson Aff. at 16.)

On 19 January 2016 plaintiff expressed, by email to Goodson and Antonio Cruz, an EEO officer, her concerns that she was being harassed and discriminated against by her supervisors Englander and Wilson. (Walton Dec. (DE # 51-1) at 5; Def.'s Corrected App. to Statement of Facts (DE # 47) Ex. 15.) On that same day, Cruz and Goodson met with plaintiff to discuss her concerns. (Def.'s Corrected App. to Statement of Facts (DE # 47) Goodson Aff. at 20, Cruz Aff. at 4; Walton Dec. (DE # 51-1) at 5.) Following that meeting, plaintiff received no further communication from Goodson or Cruz regarding her complaints. (Walton Dec. (DE # 51-1) at 5; Def.'s Corrected App. to Statement of Facts (DE # 47) Goodson Aff. at 21.) Ten days later, on 29 January 2016, Wilson and Englander hand-delivered a notice terminating plaintiff's

employment with NCDHHS. (Compl. (DE # 5) at 4; Def.'s Corrected App. to Statement of Facts (DE # 47) Goodson Aff. at 21.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party seeking summary judgment must demonstrate the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial," and may not rest on the allegations or denials in its pleading. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247–48. In determining whether a genuine issue of material fact exists, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). In considering cross-motions for summary judgment, the court should "consider and rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard." Monumental Paving & Excavating, Inc. v. Penn. Mfr. Ass'n Ins. Co., 176 F.3d 794, 797 (4th Cir. 1999).

## III. DISCUSSION

Plaintiff first alleges that NCDHHS terminated her on 29 January 2016 in retaliation for her 19 January 2016 email complaint and her 2015 EEOC charge. On this claim, NCDHHS

moves for summary judgment alleging plaintiff fails to make a prima facie case of retaliation or, in the alternative, that plaintiff fails to demonstrate that NCDHHS' proffered reasons for her termination were pretextual. Plaintiff also alleges that she was subjected to sexual harassment by her trainer, Englander. Defendant moves for summary judgment as to this claim on the grounds that plaintiff has failed to demonstrate any specific instances where Englander made sexual statements to her and failed to demonstrate that any such comments created a hostile work environment. Plaintiff likewise moves for summary judgment on both of these claims contending there are no genuine issues of material fact and that she has established a prima facie case of each claim.[1]

**A.     Retaliation**

Title VII prohibits discrimination or retaliation against an employee for opposing an unlawful employment practice. See 42 U.S.C. § 2000e-3(a). To establish a claim for retaliation with indirect evidence, the plaintiff must utilize the three-part burden-shifting framework established in McDonnell Douglas Corp. v. Green. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see Lettieri v. Equant Inc., 478 F.3d 640, 649–50 (4th Cir. 2007). Under this framework, the plaintiff must first establish a prima facie case of retaliation by the preponderance of the evidence. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–53 (1981); Lettieri, 478 F.3d at 649–50; Sanders v. Tikras Tech. Sols. Corp., 725 F. App'x 228, 229

---

[1] Plaintiff also asserts based on "the failure of Defendant to engage in any discovery, this matter should be deemed to have no genuine dispute warranting trial." (Pl.'s Mot. Summ. J. (DE # 35) at 1.) The Memorandum in Support of her Motion contains a similar assertion, "Defendant has no discovery to date and has sought no discovery." (Pl.'s Mem. in Supp. Mot. Summ. J. (DE # 36) at 1; Pl.'s Statement of Facts (DE # 39) at 1.) However, based on plaintiff's citation to various "Discovery Responses" it appears some discovery has taken place. (See, e.g., Response to Request #12 (DE # 51-4); Walton Dec. (DE #51-1) at 5–6.) It is unclear from her allegations whether plaintiff contends defendant failed to propound or failed to respond to discovery. In either event, these contentions do not constitute grounds for summary judgment in her favor. First, while a party must comply with reasonable discovery requests, it has no obligation to request discovery itself. See generally Fed. R. Civ. Pro. 37. Second, Rule 56(d) provides remedies when the *nonmoving* party demonstrates an unavailability of facts. Fed. R. Civ. Pro. 56(d). Here, plaintiff is a moving party and has failed to specifically allege an inability to present facts essential to her arguments.

(4th Cir. 2018). If the plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for the challenged action. Burdine, 450 U.S. at 252–53; Lettieri, 478 F.3d at 646; Sanders, 725 F. App'x at 229. If the employer presents a legitimate, non-retaliatory reason for its action, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason was truly only a pretext for retaliation. Lettieri, 478 F.3d at 646–47. Showing pretext requires the plaintiff to produce evidence showing that the employer's explanation is "unworthy of credence." Dugan v. Albemarle Cty. Sch. Bd., 293 F.3d 716, 721 (4th Cir. 2002) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 147 (2000)). Thus, the plaintiff bears the ultimate burden of persuading the court that she was the victim of intentional discrimination. Burdine, 450 U.S. at 253 (citations omitted).

To establish a prima facie case of retaliation under Title VII, plaintiff must demonstrate "(1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events." EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405–06 (4th Cir. 2005) (citations omitted). Plaintiff has established the first element of her case as she engaged in two protected activities, first in February 2015 when she filed a complaint with the EEOC against NCDHHS, and then on 19 January 2016 when she emailed her complaints to Goodson and Cruz. With respect to the second element, it is undisputed that plaintiff was subjected to an adverse employment action when she was terminated from NCDHHS in January 2016.[2] However, the parties disagree as to

---

[2] Plaintiff repeatedly claims, and defendant does not deny, that she was terminated by NCDHHS in January 2016. See, e.g., (Compl. (DE # 5) at 2, 4; Pl.'s Statement of Facts (DE # 39) at 1; Pl.'s Mem. in Supp. Mot. Summ. J. (DE # 36) at 1; Pl.'s Opp'n Statement of Facts (DE # 49) at 4; Walton Dec. (DE # 51-1) at 5; Def.'s Mem. in Supp. Mot. Summ. J. (DE # 43) at 3–4.) However, plaintiff also claims she was "secretly rehired" by the department in February 2016 and thus "never terminated in January 2016." (Walton Dec. (DE # 51-1) at 5; Pl.'s Statement of Facts (DE # 39) at 1; Pl.'s Mem. in Supp. Mot. Summ. J. (DE # 36) at 1; Pl.'s Mem. Opp'n Mot. Summ. J. (DE # 50) at 2–3.) Construing the evidence in the light most favorable to plaintiff in analyzing her retaliatory discharge claim, the court accepts that she was terminated in January 2016.

7

whether plaintiff has established the final element of a causal connection between the protected activity and her termination.

At the prima face stage, establishing a causal connection "is not an onerous burden." Strothers v. City of Laurel, 895 F.3d 317, 335 (4th Cir. 2018). In fact, "'[v]ery little evidence of a causal connection is required to establish a prima facie case of retaliation.'" Burgess v. Bowen, 466 F. App'x 272, 283 (4th Cir. 2012) (quoting Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 443 (4th Cir. 1998)). As NCDHHS correctly acknowledges, temporal proximity between the protected activity and the employer's adverse action may establish a prima facie case of causation. See id.; Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 551 (4th Cir. 2006). An employer, however, cannot take action based on something of which it was unaware. See Baquir v. Principi, 434 F.3d 733, 748 (4th Cir. 2006). Thus, the plaintiff must also establish that the relevant decision-makers had knowledge of the protected activity at the time of the alleged retaliation. Balas v. Huntington Ingalls Indus., 711 F.3d 401, 410–11 (4th Cir. 2013); Baquir, 434 F.3d at 748.

Here, plaintiff points to evidence supporting both temporal proximity and knowledge on behalf of a decision-maker. She was terminated ten days after complaining of harassment to the EEO officer and Assistant Chief of Operations. Her termination occurred immediately after the expiration of the ninety days allotted for her to file a complaint regarding her 2015 EEOC charge. Although plaintiff contends, and defendant denies, that Cruz was aware of the 2015 EEOC charge, it is undisputed that Goodson and Cruz were aware of the 19 January 2016 email. (Def.'s Corrected App. to Statement of Facts (DE # 47) Goodson Aff. at 20, Cruz Aff. at 4.) Goodson, as Assistant Chief of Operations and plaintiff's manager, actively participated in her employee reviews and the ultimate decision to terminate her employment. (Def.'s Corrected

8

App. to Statement of Facts (DE # 47) Goodson Aff. at 21.) Thus, plaintiff has established both temporal proximity between the protected activity and adverse employment action, as well as knowledge of that protected activity by an individual responsible for the action. Given the low burden of establishing causation for purposes of proving a prima facie case, the court concludes that plaintiff has established a prima facie case of retaliation.

To articulate a legitimate, non-retaliatory reason for the challenged action, NCDHHS contends plaintiff's termination resulted from her documented deficiencies in job performance. In support of this contention, NCDHHS provides affidavits from three of her supervisors along with her monthly progress reports, Englander's personal notes on her performance, and a list of "Common Repeated Errors By C. Walton." (See Def.'s Corrected App. to Statement Facts (DE # 47).)

Plaintiff's supervisors each contend that she failed to adequately perform or demonstrate adequate progress. Plaintiff's trainer, Englander, states that plaintiff was having difficulty processing cases, exhibited a resistance to supervision, and "had an outburst in [his] office" in September 2015. (Def.'s Corrected App. to Statement of Facts (DE # 47) Englander Aff. at 30.) Englander's affidavit, notes, and monthly progress reports for plaintiff demonstrate that his complaints regarding her job performance were present and persistent from September 2015 through her termination in January 2016. Comparably, Wilson, the Unit 27 supervisor, states that plaintiff's difficulties processing cases were apparent from the beginning and improved little to none despite repeated redirection and guidance. (Def.'s Corrected App. to Statement of Facts (DE # 47) Wilson Aff. at 46.) Goodson likewise states that she became aware of problems with plaintiff's performance early on. (Def.'s Corrected App. to Statement of Facts (DE # 47) Goodson Aff. at 14.) Further, Goodson professes that she reviewed the cases which were

9

returned to plaintiff with recommended revisions and that she agreed with the corrections which were requested. (Id. at 18.) Although these three supervisors acknowledge some learning curve as well as some improvement by plaintiff at times, they each note that plaintiff failed to progress at a level comparable to other trainees. In fact, Englander met with plaintiff "many times to discuss approximately sixty-six corrections needed" whereas the other trainee required only four meetings. (Def.'s Statement of Material Facts (DE # 44) at 8.) All three supervisors declare that plaintiff's performance worsened in December 2015 and January 2016. (Id. at 11; Def.'s Corrected App. to Statement of Facts (DE # 47) Englander Aff. at 34–35, Wilson Aff. at 50.)

Plaintiff's documented work performance corroborates her supervisors' sworn statements. Her progress reports for the months of September through December 2015 were created primarily by Englander, then reviewed for accuracy by both Wilson and Goodson. (Def.'s Corrected App. to Statement of Facts (DE # 47) Goodson Aff. at 12.) After the reports were reviewed by Wilson and Goodson, they were reviewed with and signed by plaintiff. (Id.) These reports evidence plaintiff's difficulty identifying and requesting the appropriate examinations, preparing adequately detailed and correct summaries, and proposing "decisionally and technically correct" determinations. (Def.'s Corrected App. to Statement Facts (DE # 47) Ex. 6–10.) In fact, plaintiff received the "Improvement Needed" mark in each of these three areas on all four of her completed monthly reports. (Id.) The "discussion" section of the reports also provide examples of plaintiff's alleged shortcomings with reference to the specific case number. (See, e.g., Def.'s Corrected App. to Statement Facts (DE # 47) Ex. 7 at 97.) In addition to plaintiff's monthly progress reports, Englander personally kept and maintained notes regarding his meetings with her, the errors in her work product, and the corrections he recommended to her from October 2015 through 27 January 2016. (Def.'s Corrected App. to

Statement Facts (DE # 47) Ex. 4, Englander Aff. at 33–34.)  Finally, Englander prepared a list of "Common Repeated Errors By C. Walton," which provides the case number as well as the specific mistake(s) made by plaintiff in assessing that matter.  (Def.'s Corrected App. to Statement Facts (DE # 47) Ex. 5, Englander Aff. at 33–34.)  This documentation demonstrates the reasons for plaintiff's termination: inadequate job performance and inadequate progress.

Because "[j]ob performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision," Evans v. Technologies Application & Serv. Co., 80 F.3d 954, 960–61 (4th Cir. 1996) (citations omitted), the burden returns to the plaintiff to demonstrate that these reasons "were not [defendant's] true reasons, but were a pretext for discrimination."  Lettieri, 478 F.3d at 648 (citation omitted).  Faced with defendant's assertion that it terminated her because of her inadequate job performance, not because of her complaints, plaintiff must identify evidence calling into question the honesty of NCDHHS' beliefs.  See DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998).  "It is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."  Id. (citation omitted).

Aside from the fact that at least one of her managers had knowledge of her complaint at the time of her termination, plaintiff presents no evidence to support her claim of pretext other than her own assertions.  Plaintiff contends:

> The reasons cited in Defendant's Memorandum is a pretext because 1. Cruz was aware of Plaintiff's prior EEOC charge by virtue of his job with NCDHHS NCFAST as the EEO Officer, 2. Goodson made the decision to not to [sic] address Plaintiff's concerns but to fire her just 9 days after meeting with Plaintiff and 3. Plaintiff still had 6 days to file a grievance per state policy.  Goodson did not want Plaintiff to file a grievance nor did she want [to] address Plaintiff's concerns; her only solution was to terminate Plaintiff. Plaintiff's secret rehiring on February 29, 2016 is further evidence of pretext.

11

(Pl.'s Mem. Opp'n Mot. Summ. J. (DE # 50) at 2–3.) (internal citations omitted). Plaintiff further contends her performance was adequate. (Pl.'s Opp'n Statement of Facts (DE # 49) at 3.) Finally, although not specifically termed "pretext" by plaintiff, she claims that NCDHHS practice is to return unsuccessful trainees to Phase I and/or transfer them rather than terminate them as it did her. (Walton Dec. (DE # 51-1) at 6.) These proffered reasons fail to "'cast sufficient doubt upon the *genuineness* of the [defendant's] explanation to warrant a jury's consideration of possible alternative and discriminatory motivations for the firing.'" Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 217–18 (4th Cir. 2016) (emphasis added) (quoting King v. Rumsfeld, 328 F.3d 145, 154 (4th Cir. 2003)).

Addressing each of plaintiff's stated reasons in turn, Cruz's mere awareness of her complaint does not call into question the honesty of NCDHHS' proffered and well-documented justifications for her termination. See Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989) ("Plainly, mere knowledge on the part of an employer that an employee it is about to fire has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons for discharging that employee."). Comparably, plaintiff's second and third contentions rely on the temporal proximity between her protected activities and defendant's action. While temporal proximity may satisfy the less onerous burden of a prima facie case of causality, it "'far from conclusively establishes the requisite causal connection.'" Yashenko, 446 F.3d at 551 (quoting Williams, 871 F.2d at 457).

Finally, plaintiff's arguments that her job performance was adequate and that defendant violated its own policy by terminating her instead of training her further, likewise fail to demonstrate that defendant's offered justifications are mere pretext. In assessing proffered justifications regarding employee job performance, "'it is the perception of the decision maker

12

which is relevant,' not the self-assessment of the plaintiff." Evans, 80 F.3d at 960–61 (quoting Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980)). Defendant's concerns with plaintiff's job performance are well-documented beginning in September 2015. (Def.'s Corrected App. to Statement of Facts (DE # 47) Ex. 4, Englander Aff. at 30, Goodson Aff. at 14, Wilson Aff. at 46–47). While plaintiff may disagree in part with her employer's assessment of her performance, there is no question that these evaluations were prepared monthly over the course of five months and reviewed by three supervisors before being reviewed with plaintiff. (Def.'s Corrected App. to Statement of Facts (DE # 47) Ex. 4, Goodson Aff. at 12.) Plaintiff fails to demonstrate as a reasonable probability that these reports were falsely created or created as a pretext for retaliation. The decision to terminate plaintiff for her documented inadequate performance lies within the purview of the employer, see DeJarnette, 133 F.3d at 298–99 ("[T]his Court 'does not sit as a kind of super-personnel department weighing the prudence of employment decisions . . . .'" ) (quoting Giannopoulos, 109 F.3d at 410)), and is explained in the Stage II Agreement signed by plaintiff (see Pl.'s App. to Statement of Facts (DE # 40-1) at 7; Def.'s Corrected App. to Statement of Facts (DE # 47) Ex. 3 at 57).

While the court is sympathetic to plaintiff's frustration with the NCDHHS workplace and her feelings of retaliation, the law requires that she demonstrate that its nondiscriminatory reasons for her termination are pretextual in order to survive summary judgment. Her evidence of pretext—awareness of her complaints, temporal proximity between activity and action, and her allegedly adequate performance—fail to refute NCDHHS' evaluations of her performance and well-documented complaints regarding the same. Although one or more of those involved in her termination were aware of her complaints and a close temporal proximity between activity and action existed, plaintiff failed to introduce sufficient evidence to cast doubt on the

13

genuineness of the nondiscriminatory reasons for termination offered by NCDHHS. With no genuine issue of material fact existing, summary judgment in favor of NCDHHS is appropriate.

**B.      Sexual Harassment**

Plaintiff alleges that a hostile work environment existed due to Englander's purported sexual harassment. To state a hostile work environment claim, plaintiff must demonstrate that:

> (1) she experienced unwelcome harassment; (2) the harassment was based on her . . . [gender]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.

Buchhagen v. ICF Int'l, Inc., 545 F. App'x 217, 219 (4th Cir. 2013) (quoting Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003)). Sexual harassment, specifically, "occurs when the victim is subjected to sex-specific language that is aimed to humiliate, ridicule or intimidate." Jennings v. Univ. of North Carolina, 482 F.3d 686, 691, 695 (4th Cir. 2007) (en banc) (citations omitted). Whether the harassment creates "an abusive atmosphere" presents both a subjective and objective inquiry based upon all of the circumstances. EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009) (citation omitted). Thus, plaintiff must demonstrate that she "did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." Id. The circumstances to be considered in this analysis include: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." Smith v. First Union Nat'l Bank, 202 F.3d 234, 242 (4th Cir. 2000); see also Cent. Wholesalers, 573 F.3d at 176.

Plaintiff contends that Englander made unwelcome comments to her regarding his genitalia during her one-on-one training sessions. (Walton Dec. (DE # 51-1) at 7.) Specifically,

14

she alleges that he referenced his "penis, balls, and penile cancer." (Compl. (DE # 5) at 4.) Additionally, she states:

> On one occasion, Englander said to Plaintiff, 'I have one ball!' 'My friends always call me one balled friend. It's [sic] doesn't keep me from getting women.' He recited jokes his friends told regarding their encounters with women and regarding his testicles.

(Walton Dec. (DE # 51-1) at 7.)

Assuming these comments constitute unwelcome harassment based on plaintiff's sex, in order to be actionable, the harassment must be so "severe or pervasive" that "a reasonable person would perceive, the environment to be abusive or hostile." Cent. Wholesalers, 573 F.3d at 175. As repeatedly recognized by the Fourth Circuit, satisfying "the severe or pervasive test" is a high bar for the plaintiff. See, e.g., EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306 (4th Cir. 2008). Subjectively, plaintiff contends she "felt very uncomfortable," "did not know what to say and was often alarmed at [Englander's] statements." (Walton Dec. (DE # 51-1) at 7.) Although plaintiff does not provide specific evidence of how these comments impacted her work performance, the court accepts her contention that she perceived the harassment to be severe. However, the harassment must also be objectively severe in order to prevail on summary judgment. Cent. Wholesalers, 573 F.3d at 175. Although uncomfortable for plaintiff and most likely inappropriate, Englander's comments are not so "severe or pervasive" that "a reasonable person would perceive, the environment to be abusive or hostile." Id.

While the precise frequency of Englander's comments is unclear, the severity of the comments does not demonstrate that the workplace "was pervaded with discriminatory conduct 'aimed to humiliate, ridicule, or intimidate.'" Cent. Wholesalers, 573 F.3d at 176 (quoting Jennings, 482 F.3d at 695). Plaintiff was not physically touched, threatened, subjected to racial or religious epithets, called degrading names, personally insulted, shown pornographic material,

15

or asked for sexual favors. See, e.g. Ziskie v. Mineta, 547 F.3d 220, 228 (4th Cir. 2008) (citations omitted) (providing examples of such harassment sufficient to reach a jury). Instead, she was subject to off-handed comments about Englander's anatomy, which more closely resemble "offensive utterance[s]." See Smith, 202 F.3d at 242. Although these comments were undoubtedly distasteful, "there is a line between what can justifiably be called sexual harassment and what is merely crude behavior." Id. Title VII does not provide a remedy for the latter. See id. (emphasizing the distinction between situations presenting serious obstacles to minorities and those "when human nature simply is not at its best."); Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 754 (4th Cir. 1996) ("Title VII was not designed to create a federal remedy for all offensive language and conduct in the workplace."). Therefore, even accepting plaintiff's evidence as true and considering it in the light most favorable to her, she has failed to demonstrate that Englander's comments were so objectively "severe or pervasive" as to create an abusive work environment. Without any genuine issues of material fact as to plaintiff's claim for sexual harassment, NCDHHS is entitled to judgment as a matter of law on this issue.

### III. CONCLUSION

For the reasons stated herein, plaintiff's motion for summary judgment, (DE # 35), is DENIED. NCDHHS' motion for summary judgment, (DE # 42), is GRANTED. Plaintiff's motion for a protective order, (DE # 57), is DENIED as moot. The Clerk is DIRECTED to enter judgment in favor of NCDHHS and close this case.

This 7 November 2018.

_____
W. Earl Britt
Senior U.S. District Judge